IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM EUGENE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-CV-465-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, William Eugene Robinson ("Robinson"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Robinson's applications for disability insurance benefits and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Robinson appeals the April 17, 2014 decision of Administrative Law Judge Deborah L. Rose ("ALJ Rose" or "the ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Robinson was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Before summarizing Robinson's testimony and the medical records contained in the administrative transcript, the Court notes that Robinson raises only the issue of whether the ALJ's RFC determination that Robinson had the capacity to perform light work[1] was supported by substantial evidence. Plaintiff's Opening Brief, Dkt. #17, p. 5. Robinson focuses this argument on three sets of documents: Medical records of Richard A. Hastings II, D.O., an examining physician, from March and April 2007 (R. 223-35); the consultative examination report of Seth Nodine, M.D., dated June 16, 2009 (R. 267-74); and the decision of the first ALJ, John Volz, dated October 7, 2010 (R. 21-30). Plaintiff's Opening Brief, Dkt. #17. Because Robinson has presented a narrow and focused argument, the Court deems it unnecessary to summarize all of the medical records contained in the 1000-plus page administrative transcript. (R. 223-1040). The decision to summarize only a portion of the record is also appropriate because the second ALJ, ALJ Rose, found Robinson to be disabled as of his 55th birthday in 2011, pursuant to the "Grids," the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2. (R. 539-48). Thus, Robinson's case is similar to a "closed period" case, with the relevant time period being between his asserted onset date of October 1, 2008 and his date last insured of December 31, 2009, or, at the latest, the date in 2011 when he began receiving SSI benefits. (R. 124, 541). *See Newbold v. Colvin*, 718 F.3d 1257, 1260 n.1 (10th Cir. 2013) (describing a "closed period" case).

Robinson was 57 years old at the time of the hearing before ALJ Rose on April 2, 2014. (R. 124, 557). Robinson testified that beginning in 2002 he had worked as a self-employed

---

[1] "Light work" is a defined classification of physical exertion requirements of work in the national economy. 20 C.F.R. § 404.1567(b).

welder, mostly building fences for farmers and ranchers, but also repairing items for other companies, such as oil companies. (R. 565). He last worked in September 2008, and his reason for quitting was that he was no longer able to do the physical exertion required by the job. (R. 567-68). He said that there had been times that he had worked one day and then did not work for two or three days in order to recuperate from the aggravation work caused of his physical problems with his shoulder, neck, and back. *Id.*

Robinson testified that in the time period of 2008 and 2009, his problems were primarily with his neck, left shoulder, left knee, and back. (R. 569). He said that he had been injured while working for an oil company in 2006, and he had been granted workers' compensation. (R. 570). He said that his workers' compensation benefits stopped when the company declared bankruptcy and went out of business. *Id.* Robinson said that he had never had surgery for any of his conditions due to the loss of workers' compensation benefits and no other available health care resources. (R. 570-71).

Robinson described pain and limited range of motion in his shoulders, neck, lower back, and left knee. (R. 571-73). Robinson said that he had experienced gout in his left knee since age 22, but it had been controlled by medication since 2002. (R. 573).

Robinson said that the maximum he could lift would be about ten pounds, due to pain in his shoulder and neck. (R. 574-75). He thought he could only walk one block before he would have shortness of breath that would require him to stop and rest. (R. 575). He said that he was diagnosed with a lung condition in 2010. (R. 575-76). He did not do household chores. (R. 576-77). He had driven to the hearing, and he estimated that he drove fewer than 100 miles per week. (R. 578).

Robinson was seen at the Okmulgee Indian Health Center (the "Okmulgee Clinic") on October 26, 2006 for a complaint of left shoulder and arm pain that had been ongoing for four weeks. (R. 247). He was diagnosed with tendonitis of the left acromioclavicular joint (the "AC joint"), and medications were prescribed. *Id.* He returned on November 15, 2006 with the same complaint, and he was apparently prescribed prednisone. (R. 245). On January 22, 2007, Robinson said that he had reinjured the shoulder, and he was again prescribed medications. (R. 244).

Robinson was evaluated by Dr. Hastings on March 8, 2007 as part of a workers' compensation proceeding. (R. 223-35). Robinson's primary complaints were neck pain and left shoulder pain. (R. 224-25). On examination, Dr. Hastings found pain, spasm, crepitation, and motor weakness of the left shoulder that was not present in Robinson's right shoulder. (R. 225-26). Robinson also had limited range of motion of his left shoulder compared to his right shoulder. *Id.* Dr. Hastings signed a form entitled "Certificate of Disability" dated March 8, 2007 stating that Robinson was to be off work "at present & continuing." (R. 231).

An MRI of Robinson's left shoulder completed on March 12, 2007 showed a partial undersurface tear of the rotator cuff, as well as indications near the AC joint of "active inflammation that may be painful." (R. 232). An MRI of Robinson's neck that same date showed "very mild disc bulging and/or protrusion at each level from C3/4 to C6/7." (R. 233). Dr. Hastings noted these findings, as well as impingement syndrome of the left shoulder, in a letter dated March 28, 2007. (R. 234-35).

In a final report dated April 2, 2007, Dr. Hastings wrote that Robinson had not met maximum medical improvement and was in need of further evaluation and treatment. (R. 228).

Dr. Hastings wrote that Robinson was temporarily totally disabled at the time of his examination and continuing. *Id.*

Robinson returned to the Okmulgee Clinic on May 24, 2007, complaining of shoulder pain, and his rotator cuff tear diagnosis was noted. (R. 243). On August 29, 2007, Robinson complained that his left knee was bothering him, including pain, popping, and swelling. (R. 242). His rotator cuff tear was again noted, and he was diagnosed with left knee sprain. *Id.*

On March 16, 2009 at the Okmulgee Clinic, Robinson complained of bilateral shoulder pain. (R. 236).

Agency consulting examiner Seth Nodine, M.D. examined Robinson on June 16, 2009. (R. 267-74). Robinson's chief complaints were his shoulders and his neck. (R. 267). On physical examination, Dr. Nodine noted that Robinson had no acute distress at rest, but had pain with range of motion of his cervical spine and shoulders. (R. 268). He noted pain and crepitus with range of motion of Robinson's shoulders, as well as pain, crepitus, and mild pain to palpation of Robinson's left knee. (R. 269). Dr. Nodine's assessments were hypertension, gastroesophageal reflux disease, gout, diabetes, "[c]hronic bilateral shoulder pain with torn rotator cuff on left and cervical [degenerative joint disease] with bulging disc with chronic neck pain as described above," and chronic left knee pain. *Id.* On the accompanying range of joint motion evaluation chart, Dr. Nodine noted that Robinson's flexion and extension of his neck was somewhat limited. (R. 270). All other joints were noted to be within normal limits. (R. 270-71). On the backsheet, Dr. Nodine noted pain and somewhat limited range of motion of Robinson's neck. (R. 273). He noted that Robinson's neck was positive for tenderness and muscle spasm. *Id.*

Dr. Hastings wrote that Robinson was temporarily totally disabled at the time of his examination and continuing. *Id.*

Robinson returned to the Okmulgee Clinic on May 24, 2007, complaining of shoulder pain, and his rotator cuff tear diagnosis was noted. (R. 243). On August 29, 2007, Robinson complained that his left knee was bothering him, including pain, popping, and swelling. (R. 242). His rotator cuff tear was again noted, and he was diagnosed with left knee sprain. *Id.*

On March 16, 2009 at the Okmulgee Clinic, Robinson complained of bilateral shoulder pain. (R. 236).

Agency consulting examiner Seth Nodine, M.D. examined Robinson on June 16, 2009. (R. 267-74). Robinson's chief complaints were his shoulders and his neck. (R. 267). On physical examination, Dr. Nodine noted that Robinson had no acute distress at rest, but had pain with range of motion of his cervical spine and shoulders. (R. 268). He noted pain and crepitus with range of motion of Robinson's shoulders, as well as pain, crepitus, and mild pain to palpation of Robinson's left knee. (R. 269). Dr. Nodine's assessments were hypertension, gastroesophageal reflux disease, gout, diabetes, "[c]hronic bilateral shoulder pain with torn rotator cuff on left and cervical [degenerative joint disease] with bulging disc with chronic neck pain as described above," and chronic left knee pain. *Id.* On the accompanying range of joint motion evaluation chart, Dr. Nodine noted that Robinson's flexion and extension of his neck was somewhat limited. (R. 270). All other joints were noted to be within normal limits. (R. 270-71). On the backsheet, Dr. Nodine noted pain and somewhat limited range of motion of Robinson's neck. (R. 273). He noted that Robinson's neck was positive for tenderness and muscle spasm. *Id.*

X-rays of Robinson's cervical spine completed on August 20, 2009 showed mild degenerative changes with no acute abnormalities. (R. 275). X-rays of Robinson's left shoulder showed "mild degenerative narrowing" of the AC joint. (R. 276). X-rays of his right shoulder showed mild degenerative change of the AC joint. (R. 277). X-rays of Robinson's left knee were normal. (R. 277-78).

On August 20, 2009, Robinson returned to the Okmulgee Clinic with complaints of neck and shoulder pain. (R. 284).

Nonexamining agency consultant Luther Woodcock, M.D., completed a Physical Residual Functional Capacity Assessment on September 3, 2009. (R. 299-306). Dr. Woodcock indicated that Robinson could perform work at the "light" exertional level. (R. 300). In the section for narrative comments, Dr. Woodcock noted the March 2007 MRI reports and the x-rays taken August 20, 2009. (R. 300-01). Dr. Woodcock briefly noted Dr. Nodine's report, and he summarized Robinson's activities of daily living. *Id.* Dr. Woodcock found no postural, manipulative, visual, communicative, or environmental limitations. (R. 301-03).

**Procedural History**

In April 2009, Robinson protectively filed applications seeking disability insurance benefits and SSI benefits under Title II and Title XVI, 42 U.S.C. §§ 401 *et seq.* (R. 121-27). The applications were denied initially and on reconsideration. (R. 68-76, 78-83). A hearing was held before ALJ Volz on September 2, 2010. (R. 35-59). ALJ Volz issued an unfavorable decision on October 7, 2010. (R. 21-30).

Robinson appealed to this Court, and an Opinion and Order[2] was entered September 25, 2013, reversing and remanding ALJ Volz' 2010 decision. (R. 613-23). On remand, a hearing was held before ALJ Rose on April 2, 2014. (R. 557-84). ALJ Rose issued a partially favorable decision dated April 17, 2014. (R. 539-48). The 2014 decision of ALJ Rose after remand from the federal court is a final decision for purposes of this appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Social Security Law and Standard Of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009)

---

[2] Robinson v. Colvin, Case No. 12-CV-355-CVE-FHM, Northern District of Oklahoma; Opinion and Order by Claire v. Eagan, United States District Judge, dated September 25, 2013, Dkt. #22.

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience,

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

**2010 Decision of ALJ Volz**

In his 2010 decision, ALJ Volz found that Robinson met insured status requirements through December 31, 2009. (R. 23). At Step One, ALJ Volz found that Robinson had not engaged in any substantial gainful activity since his alleged onset date of October 1, 2008. *Id.* At Step Two, ALJ Volz found that Robinson had severe impairments of degenerative disc disease of the cervical spine, left rotator cuff tear, and chronic knee pain. *Id.* At Step Three, ALJ Volz found that Robinson's impairments did not meet any Listing. (R. 24).

---

and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

ALJ Volz found that Robinson had the RFC to perform work at the sedentary exertional level. *Id.* At Step Four, ALJ Volz determined that Robinson could not return to past relevant work. (R. 28). At Step Five, ALJ Volz found that there were a significant number of jobs in the national economy that Robinson could perform, taking into account his age, education, work experience, and RFC. (R. 29-30). Therefore, ALJ Volz found that Robinson was not disabled from October 1, 2008 through the date of his decision. (R. 30).

## 2014 Decision of ALJ Rose

In her 2014 decision, ALJ Rose found that Robinson met insured status requirements through December 31, 2009. (R. 541). At Step One, ALJ Rose found that Robinson had not engaged in any substantial gainful activity since his alleged onset date of October 1, 2008. *Id.* At Step Two, ALJ Rose found that Robinson had severe impairments of degenerative joint disease of the cervical spine, left shoulder partial rotator cuff tear, gout in the left knee, mild degenerative joint disease in the shoulders and right foot, and mild interstitial fibrosis. *Id.* At Step Three, ALJ Rose found that Robinson's impairments did not meet any Listing. (R. 542).

ALJ Rose found that Robinson had the RFC to perform work at the light exertional level with no more than occasional overhead reaching and no more than occasional exposure to respiratory irritants. *Id.* At Step Four, ALJ Rose determined that Robinson could not return to past relevant work. (R. 546). At Step Five, ALJ Rose made two findings. (R. 547-48). ALJ Rose found that prior to Robinson's 55th birthday in 2011, there were a significant number of jobs in the national economy that Robinson could perform, taking into account his age, education, work experience, and RFC. (R. 547). For the period of time after Robinson's 55th birthday in 2011, ALJ Rose found that there no jobs in significant numbers in the national economy that Robinson could perform, taking into account his age, education, work experience, and RFC. (R.

9

548). Therefore, ALJ Rose found that Robinson was not disabled until the date of his 55th birthday in 2011, but became disabled as of that date and remained disabled through the date of her decision. *Id.* She found that Robinson was not under a disability through December 31, 2009, Robinson's last date insured. *Id.*

## Review

As discussed at the outset of this Opinion and Order, Robinson raises only the issue of whether RFC determination of ALJ Rose that Robinson had the capacity to perform light work was supported by substantial evidence. Plaintiff's Opening Brief, Dkt. #17, p. 5. The Court agrees with Robinson that the ALJ did not provide legitimate reasons for giving Dr. Hastings' opinion evidence "no weight." For this reason, the April 17, 2014 ALJ decision is **REVERSED AND REMANDED**.

An ALJ is required to discuss all opinion evidence and to explain what weight she gives it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). An examining opinion is presumptively entitled to more weight than the opinion of a nonexamining physician. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). Any discounting or rejection of an examining opinion must be based on an evaluation of the applicable regulatory factors in Section 404.1527. *Id.* If the ALJ rejects opinions from an examining source, the ALJ is required to give specific legitimate reasons for that rejection. *Id.; Doyal v. Barnhart*, 331 F.3d 758, 763-64 (10th Cir. 2003).

Here, the ALJ's consideration of Dr. Hastings' opinion evidence consists of one sentence:

> The opinion at Exhibit 1F from Dr. Hastings who examined the claimant for a workers' compensation claim, was considered, but is given no weight because it was completed over a year before the alleged onset date and does not cover any of the period in question.

(R. 546). Thus, the ALJ's sole reason for giving Dr. Hastings' opinion no weight was that it was given more than a year before the alleged onset date.

The Court finds an unreported Tenth Circuit case that involved opinions given outside the relevant time period to be instructive in the present case. *Andersen v. Astrue*, 319 Fed. Appx. 712 (10th Cir. 2009) (unpublished). In *Andersen*, the claimant's insured status expired in 1998, and two of his treating physicians gave opinion evidence in 1999 and 2000 regarding the scope of his impairments. *Id.* at 716, 726-29. The Tenth Circuit found that the ALJ's discounting of the opinions because they were given outside of the relevant time period was not a specific legitimate reason due to the nature of the opinion evidence. *Id.* The opinions did not diagnose a new condition outside of the relevant period, but instead gave evidence of the scope of the impairment, which had been diagnosed within the relevant period. *Id. See also Hamlin*, 365 F.3d at 1215-21 (discussing the insufficiencies of the ALJ's discussion of treating physician opinion evidence relating to different time periods); *Lackey v. Barnhart*, 127 Fed. Appx. 455, 458-59 (10th Cir. 2005) (unpublished) (rejecting Commissioner's argument that opinion evidence of workers' compensation physician given several months before alleged onset date was irrelevant).

The Court finds that the one reason given by ALJ Rose is not a legitimate reason given the nature of the opinion evidence. Dr. Hastings' opinion that Robinson was temporarily totally disabled was based on objective medical evidence in the form of imaging of Robinson's neck and left shoulder, as well as his own examination of Robinson. The ALJ gave no explanation regarding how Dr. Hastings' finding that Robinson was temporarily totally disabled became a stale or inapplicable opinion one year later, given the fact that Robinson received little to no treatment for the conditions on which Dr. Hastings' opinions were based. The ALJ did not, for example, state that Robinson's conditions had improved at the time of his alleged onset date of

11

October 1, 2008, therefore resulting in the inapplicability of Dr. Hastings' opinions. Given the nature of Dr. Hastings' opinions, plus Robinson's lack of treatment throughout the relevant period for the conditions underlying those opinions, the ALJ's sole reason for giving those opinions no weight was not sufficient. *Andersen*, 319 Fed. Appx. at 726-29; *Lackey*, 127 Fed. Appx. at 458-59.

The Commissioner opens her argument by stating that the ALJ made a supported credibility assessment. Commissioner's Brief, Dkt. #22, pp. 4-6. Robinson rightly responds in his Reply Brief that he did not appeal the credibility finding of ALJ Rose. The Court agrees that the issue of Robinson's credibility has no relevance to whether the ALJ correctly gave no weight to the opinion evidence of Dr. Hastings. A finding that subjective complaints are not credible can support giving less weight to a physician opinion. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014). In the present case, however, the ALJ did not state that she was giving Dr. Hastings' opinion evidence less weight because he relied on unreliable subjective complaints of Robinson. (R. 539-48). Thus, the Commissioner's inclusion of an argument based on Robinson's credibility is irrelevant or, to the extent it is an attempt to justify ALJ Rose's decision regarding D. Hastings' opinion evidence, it is in the nature of *post hoc* justification of the ALJ's decision, and this Court will not usurp the ALJ's function by making findings that are not contained in her decision. *Krauser v. Astrue*, 638 F.3d 1324, 1328-30 (10th Cir. 2011) (*post hoc* justifications of ALJ's analysis of treating physician opinion were prohibited); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (*post hoc* rationale is improper because it usurps agency's function of weighing and balancing evidence in the first instance).

The same is true of the Commissioner's next argument, that the opinion evidence of Dr. Hastings was not true medical opinion, citing *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir.

2008).  Commissioner's Brief, Dkt. #22, p. 7.  The Court has some sympathy for this position, but the ALJ expressly referred to Dr. Hastings' "opinion at Exhibit 1F." (R. 546).  Thus, it appears to this Court that the ALJ did not reject Dr. Hastings' statement that Robinson was temporarily totally disabled because it was not a true medical opinion, but that instead ALJ Rose found that there was opinion evidence contained within the documents relating to Dr. Hastings' examination and report on Robinson.  *See also Lackey*, 127 Fed. Appx. at 458 (distinguishing between workers' compensation examining physician's opinion of disability versus underlying diagnosis and findings of limited range of motion).  The Court will not, in a *post hoc* effort to save the ALJ's decision, invoke a rationale that appears to have been expressly rejected by the ALJ.

The Court also rejects the Commissioner's related argument that Dr. Hastings' opinion evidence was consistent with the RFC determination of ALJ Rose and that therefore Robinson was not harmed by a finding that the opinion was entitled to no weight.  Commissioner's Brief Dkt. #22, pp. 7-8.  This Court will not weigh Dr. Hastings' opinion on behalf of the ALJ, but must allow the ALJ to make that analysis on remand.  *See Martinez v. Astrue*, 422 Fed. Appx. 719, 726-27 (10th Cir. 2011) (unpublished) ("it would be improper for this court to reanalyze" opinion evidence using correct standards).  This is not a case in which this Court can say that a correct weighing of Dr. Hastings' opinions would make no difference because no reasonable factfinder could have come to a different conclusion regarding Robinson's RFC.  *Compare Marshall v. Astrue*, 315 Fed. Appx. 757, 760-62 n.2 (10th Cir. 2009) (unpublished) (ALJ's analysis should have been more thorough, but the error was harmless because no reasonable factfinder could have found that physician opinion was supported by medically acceptable objective evidence).

Because the ALJ gave insufficient reasons to support her attribution of no weight to the opinion evidence of Dr. Hastings, the Court **REVERSES and REMANDS** the ALJ's 2014 decision for further consideration.

**Conclusion**

The Court takes no position on the merits of Robinson's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because this case is reversed based on the inadequacy of the ALJ's evaluation of the opinion evidence of Dr. Hastings, the undersigned declines to comment on any other aspects of Robinson's argument. On remand, the Commissioner should ensure that any new decision sufficiently addresses all arguments made by Robinson.

Based on the foregoing, the decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 17th day of August 2015.

Paul J. Cleary
United States Magistrate Judge